# LPG&M
## LAZARE POTTER GIACOVAS & MOYLE LLP

747 THIRD AVE, FLOOR 16
NEW YORK, NEW YORK 10017
T: 212.758.9300
F: 212.888.0919
LPGMLAW.COM

Mobile (917) 754-0276
rgiacovas@lpgmlaw.com

December 30, 2020

VIA ECF

Hon. Judge Shelly C. Chapman
United States Bankruptcy Court
Southern District of New York

  RE: In re WMCH 25 Holdings, LLC ("Debtor"); Case No. 20-12534-scc; Request for Conference:

Your Honor:

  We represent non-parties Westwood Capital LLC and Quarter Century Holdings, LLC (individually "Westwood" and "QCH"; collectively the "Non-Parties") regarding 2004 Subpoenas in the above-entitled action, and pursuant to the Court's November 16, 2020 Order (Doc. #7) granting Creditor, Leonard Blum's ("Blum") Application for 2004 examinations of non-parties that includes all of Blum's former business partners (the "Application").

  Since we responded to the Subpoenas, counsel for the parties have "met and conferred" in accordance with your Honor's rules and resolved all but Blum's request for the production of our confidential time records and almost two years of communications by and between the Non-Parties and this firm, *including all attorney-client privileged communications between them and our firm as counsel* for the various Non-Parties involved in the sale of Westwood by the Debtor to QCH. The request for these communications is premised on the bald claim that the sale of Westwood was fraudulent. We respectfully submit that there is no basis for this claim and therefore seek Your Honor's intervention on the remaining discovery item.

  As context for this dispute, the Court should understand that the Debtor was forced into bankruptcy by Blum's costly arbitration against the Debtor, its subsidiaries and each of his former partners. Blum was a Managing Member of the Debtor and an employee of Westwood. In the spring of 2014, after assisting in establishing a profitable new line of business, Blum quit without notice, took the business for his own, started a competing firm, and then sued his partners, the Debtor and Westwood (and other affiliated entities) seeking over $5 million dollars under a variety of legal theories. In December of 2018, the Panel issued a partial award in his favor of only $234,500 against Westwood for unpaid services (this partial award has been since paid in full).

Importantly, as a result of the partial award, Blum relinquished all ownership interest in the Debtor as of December 31, 2018. Following the partial award, Blum was allowed to apply for the recovery of legal fees; his fee application sought $1,055,187.28 in fees and costs. On January 27, 2020, the Debtor received the Panel's final award in which Blum was awarded $532,732.49 in fees and costs.

Under FINRA rules, which regulated the Debtor's broker-dealer subsidiary (Westwood), the receipt of the final award was a material adverse change which necessitated reporting to FINRA by February 27, 2020 (30 days from the final award). This would have, but for the sale, resulted in the deregistration of Westwood due a violation of FINRA's net capital requirements. Accordingly, the Debtor sold Westwood to QCH on February 25, 2020 principally for (i) the assumption of Debtor's obligation under that certain commercial lease with the landlord, 5th Avenue, LLC and (ii) the Debtor's assumption of Westwood's liability to Blum (i.e. the aforementioned $234,500 partial award).

To ensure transparency, the value of Westwood was verified by an unaffiliated third-party valuator with no history with any individual, firm, or employee of the debtor, QCH, or their affiliates. The value was deemed far less than the assumption of debt by QCH but to ensure even greater transparency, the sale agreement provides for further independent valuations of Westwood and, if necessary, an adjustment to the purchase price based upon those valuations.

Blum has intervened in this Bankruptcy proceeding with the sole purpose of proving that the sale of Westwood to QCH was a fraudulent transaction. We, as counsel for Westwood and QCH, provided Blum's counsel with complete access to everything requested in the Subpoenas (other than the communications and invoices at issue) and the Debtor supplemented this with the documents that were provided to the Trustee. However, Blum will not withdraw his request for all attorney-client privileged communications and/or work product exchanged between the Non-Parties, the Debtor, any of their employees and the attorneys in my firm. Blum even wants copies of my firm's invoices for the past two years (since January of 2019).

At our December 23, 2020 "meet and confer", when asked for their justification for invading the attorney client privilege, Blum's counsel stated that they want to "explore" my firm's "role in the transaction [i.e. the Debtor's sale of the broker-dealer]" and added (recklessly we submit) that he believed that Blum has a claim against my firm for "aiding and abetting" the fraudulent transfer of the broker-dealer. Making false accusations of fraud does not lift that heavy burden from Blum. Indeed, even if there were any concern over the transaction, or any hint of fraud, such a claim would belong to the Trustee—not to Blum. However, as noted, the purchase and sale agreement provides a mechanism for dealing with any questions of a potential fraudulent transfer and obviates the need for any blunderbuss discovery of attorney client materials by Blum.[1]

Simply put, if the independent audit results in a determination that the purchase price was too low, then the Debtor has the right to unwind the transaction, or demand additional payment for

---

[1] Indeed, over the last two years, my firm has rendered substantial legal services to the Debtor and to Westwood in connection with the aforementioned arbitration (the partial and final awards), the post-arbitration enforcement proceedings in New York Supreme Court, and in a variety of other legal matters having nothing to do with the Debtor's sale of the broker-dealer. Thus, on its face, the request for two years of communications and legal bills is entirely irrelevant to the Debtor's bankruptcy filing or the sale of the broker-dealer.

Hon Judge Shelley C. Chapman
December 30, 2020

the asset (Westwood). If Blum is truly concerned about the value of Westwood being far greater than what QCH paid for it, then his recourse is to press the Trustee for an independent valuation—not to demand access to attorney-client privileged communications and work product. It is this dispute over attorney-client protected materials which necessitates the requested conference with Your Honor.

                                  Respectfully submitted,

                                  /s/ Robert A. Giacovas, Esq.

cc:      counsel for Leonard Blum
         (via email and ECF)