# AMINI LLC

Jeffrey Chubak  
MEMBER NY & NJ BARS

212.497.8247  
jchubak@aminillc.com

February 12, 2021

**By ECF and Email**

Honorable Shelley C. Chapman  
U.S. Bankruptcy Court for the Southern District of New York  
One Bowling Green  
New York, NY 10004

Re: <u>In re WMCH 25 Holdings, LLC, No. 20-12534</u>

Dear Judge Chapman:

We represent Creditor Leonard Blum, and write to request a conference, pursuant to Paragraph 11 of the Protective Order (ECF Doc. #13), and the Chambers Rules, to consider the propriety of confidentiality designations as to 3 documents produced by Lazare Potter Giacovas & Moyle LLP (LPGM) on behalf of the Debtor, pursuant to the Rule 2004 Order (ECF Doc. #9), specifically: [1] 2019 Schedule K-1s for the Debtor's 5 members; [2] 2019 Form W-2s for 2 of the Debtor's members; and [3] a valuation report prepared by Mercer Capital, estimating the value of the Debtor's interests in its broker-dealer subsidiary as of February 25, 2020, the date the Debtor transferred said interests to an entity owned entirely by all of the Debtor's members, in consideration for the transferee's assumption of the following 2 liabilities: [a] Blum's arbitration award against the subsidiary (but not that against the Debtor) ($234,500, paid by the subsidiary, not the Debtor), and [b] remaining lease obligations as to the premises from which the subsidiary (but not the Debtor) operates ($622,500). Blum previously notified LPGM of his challenge to the subject designations, pursuant to the Protective Order, and the parties conferred as to the matter.

Blum wishes to file the above-described documents in support of a motion to dismiss this case, [1] pursuant to Bankruptcy Code section 707(a), for cause, on the ground that it is in practical terms a 2-party dispute, that serves no bankruptcy purpose (*In re Murray*, 900 F.3d 53, 63 (2d Cir. 2018)),[1] and [2] pursuant to Rule 37(b)(2)(A)(v), made applicable by Rule 9014(c), the Debtor, the subsidiary and the transferee having refused to produce any communications concerning the transfer (relevant to intent) or the invoices of LPGM, which has represented the Debtor, the subsidiary and the transferee,[2] so as to frustrate Blum's investigation of an aiding and abetting

---

[1] Blum is 99.8% of the potential claims pool, excluding the scheduled claim of an affiliate, which the Debtor's 341 meeting representative conceded was a book transfer not based on any written agreement, and the scheduled claim of LPGM, which advised the undersigned that it will not be filing a proof of claim.

[2] Specifically, LPGM represented the Debtor and the subsidiary in the arbitration and the resulting special proceeding to confirm the award, the Debtor in the sale transaction and the subsidiary and the transferee herein. Debtor's counsel of record herein ostensibly represented the transferee in the sale transaction (the Debtor's 341 meeting representative testified that members of the Debtor's 3-member "executive committee" negotiated the purchase agreement on behalf of both the Debtor and the transferee), but

cause of action. *See Priestley v. Panmedix Inc.*, 134 A.D.3d 642, 642-43 (1ˢᵗ Dep't 2015) (recognizing cause of action against law firm for aiding and abetting fraudulent conveyance).

The above-described 3 documents are plainly relevant to the anticipated motion. Blum seeks dismissal so he can pursue fraudulent conveyance claims in state court. LPGM opposes dismissal, on the ground that there is no fraudulent conveyance exposure because the valuation report shows that the Debtor received fair equivalent value (ECF Doc. #19), which according to the report is the transfer of property having a value over, or the assumption of obligations of the Debtor exceeding, $506,700, the "adjusted book value" of the Debtor at the time of the transfer.[3] Naturally, the report needs to be filed to consider this issue.

LPGM has asked Blum to move to seal the report, because the Debtor agreed to keep it confidential. However, it is black letter law that documents cannot be sealed on consent. *In re Anthracite Capital, Inc.*, 491 B.R. 162 (Bankr. S.D.N.Y. 2013). More significantly, the Protective Order (at ¶2) only permits the designation of documents reasonably and in good faith believed to be protect-able under Rule 26(c)(1)(G) ("trade secrets or other confidential research, development or commercial information", which standard mirrors Bankruptcy Code section 107(b)(1) and Rule 9018(1)), and LPGM does not dispute that the report is ineligible for protection under this standard.

The Schedule K-1s and Form W-2s are also relevant to the anticipated motion, because they show that the Debtor's 3-member "executive committee" was paid $2 million in cash in 2019, that the remaining "passive investor" members received an additional roughly $200,000 in "ordinary business income" (cash), and that the 5 members also received non-cash transfers in the form of capital account increases and IRC section 199A income, wages and unadjusted basis totaling $7.9 million, raising serious questions as to Mercer Capital's conclusion that the subsidiary was only worth $506,700 at the time of the transfer. LPGM contends that these documents should be sealed, because the financial information therein is personal in nature, but does not dispute that the documents are likewise ineligible for protection under the Protective Order.

Despite the parties agreeing that the documents at issue are ineligible for protection, LPGM is refusing to de-designate them and consent to Blum's filing them in support of the motion. We therefore request a conference to resolve this issue. If the documents are de-designated, Blum would of course redact information required by Rule 9037.

Very truly yours,

*Jeffrey Chubak*

---

contends his role was de minimis. The LPGM invoices are being withheld on the ground of attorney-client privilege, even though, they are not. *Renner v. Chase Manhattan Bank*, No. 98-cv-926, 2001 WL 1356192 (S.D.N.Y. Nov. 2, 2001). In any event, for the time being the privilege belongs to the Trustee.

[3] The "adjusted book value" was calculated by taking the "reported book value" as of the date of the transfer ($1,029,412), adding the lease security deposit ($97,740) and the estimated cost to obtain a broker-dealer license ($75,000), and then subtracting a "related party" receivable ($695,484) that "was uncollectible and subsequently written off." No explanation is provided as to why insider receivables would ever be uncollectible, given the insider transfers identified herein.