UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WMCH 25 HOLDINGS, LLC<br>  dba Westwood Capital Holdings, LLC,<br><br>                    Debtor. | Chapter 7<br><br>Case No. 20-12534-scc<br><br>**NOTICE OF HEARING** |

PLEASE TAKE NOTICE, that a hearing on the annexed **Motion to Dismiss Case**, will be held before the Honorable Shelley C. Chapman, on May 19, 2021, at 10:00 a.m., or as soon thereafter as counsel may be heard. Pursuant to General Order M-543, Court Operations under the Exigent Circumstances Created by Covid-19, the hearing will be conducted telephonically through Court Solutions.

PLEASE TAKE FURTHER NOTICE, that any objections to the motion must be filed by May 12, 2021.

Dated: New York, New York
       April 16, 2021

AMINI LLC

/s/ Jeffrey Chubak
Jeffrey Chubak
Noam Besdin
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
jchubak@aminillc.com
nbesdin@aminillc.com
*Attorneys for Creditor Leonard Blum*

Jeffrey Chubak
Noam Besdin
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
jchubak@aminillc.com
nbesdin@aminillc.com
*Attorneys for Creditor Leonard Blum*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WMCH 25 HOLDINGS, LLC<br>  dba Westwood Capital Holdings, LLC,<br><br>                                        Debtor. | Chapter 7<br><br>Case No. 20-12534-scc<br><br>**MOTION TO DISMISS CASE** |

Creditor Leonard Blum ("Blum") hereby moves to dismiss this case, pursuant to Bankruptcy Code section 707(a) and Rule 37, and states:

**BACKGROUND**

**I.     BLUM IS THE ONLY CREDITOR HEREIN**

1.     On December 17, 2018, an AAA panel issued a partial final award in Blum's favor against the Debtor and its broker-dealer subsidiary Westwood Capital LLC ("Westwood Capital"). (ECF Doc. #6-7.)

2.     On January 22, 2020, a final award was issued against Westwood Capital in the amount of $234,500, and against the Debtor in the amount of $532,732.49.  (ECF Doc. #6-8.)

3.     On October 21, 2020, the final award was confirmed.  (ECF Doc. #6-10.)

4.     By the same decision, the Debtor was given 5 days to comply with pre-judgment document subpoenas served under CPLR Article 52 or face contempt sanctions.

5.     Instead of complying, the Debtor filed this case. Schedule A/B (ECF Doc. #1) lists $4,920 in the bank and no other assets save interests in LLCs the Debtor valued at $0.

6. Blum is the only person to have timely filed a claim herein.

## II. CAUSES OF ACTION RELATING TO THE WESTWOOD CAPITAL TRANSFER ARE HIS ONLY SOURCE OF RECOVERY

7. Blum's sole source of recovery is causes of action resulting from the Debtor's transfer on February 25, 2020, of its interests in Westwood Capital to Quarter Century Holdings LLC ("QCH") "in exchange for assumed liabilities and lease obligations of $857,010." (ECF Doc. #1, SOFA Item 13.1.)

### A. The Transfer Bears Multiple Badges of Fraud

8. QCH was formed February 11, 2020 (ECF Doc. #6-12), two weeks before the transfer.

9. As provided in Exhibit 1, its initial members were Daniel Alpert ("Alpert"), the Debtor's and Westwood Capital's Founder (ECF Doc. #6-11) and the signatory to the petition, schedules and SOFA herein, and Jon Messersmith ("Messersmith").

10. QCH's Operating Agreement, Exhibit A of which is attached hereto as Exhibit 2, indicates that the company's membership units are held 26.9% by Alpert, 20.44% by Messersmith, 18.27% by Paul Tanico, 18.27% by Ellen Adams (individually and through her GST trust) and 16.12% by Keiki Michael Cabanos ("Cabanos"), whom together comprised all of the Debtor's members. (ECF Doc. #1, Resolution of Members.)

11. QCH's members did not purchase their interests; but rather, equity was distributed on the basis of agreements among members. Percentage interests in QCH were keyed to those held in the Debtor, with Messersmith and Cabanos seeing relative ownership percentage increases as a form of retention award. (341 Tr., annexed hereto as Exhibit 3 ("Tr.") at 27:8-22.)

12. The transfer was consummated pursuant to a Purchase and Sale Agreement between the Debtor and QCH, dated as of February 25, 2020 ("Agreement") and attached hereto as Exhibit

4 together with the accompanying "Assignment and Assumption Agreement" and Disclosure Schedule.

13. Under Section 1.02 of the Agreement, the purchase price consideration was (a) $10 to be paid at closing to the Debtor by wire transfer; and (b) assumption by QCH of (i) remaining obligations under "the real estate lease dated October 18, 2004 between the Company and 5th Avenue LLC, later assigned from the Company to the Seller by assignment agreement of November 1, 2008" and (ii) "the payment obligation assumed by the Seller in favor of the Company in the amount of $234,500."

14. The leased premises were used solely by Westwood Capital and its subsidiaries, not the Debtor which just served as its holding company. (Tr. at 23:19-24:6.)

15. The sole remaining assumed obligation was the now-confirmed award against Westwood Capital. (Tr. at 24:7-24:25.)

16. The Debtor's bank statements produced do not reflect a $10 wire transfer ever having been made, and Alpert testified no cash was ever given. (Tr. at 12:8-9.)

17. The asserted reason for the transfer, was that the final award rendered the Debtor insolvent (Tr. at 11:9-11, 22:13-18, 23:15-18 and 28:17-19), and Westwood Capital would have been required to notify its regulator (FINRA) of the insolvency (Tr. at 22:13-18); upon receiving notice, the regulator "very likely … would have stepped in to shut down the operations of the broker dealer" (Tr. at 22:18-21); and so, "in order to preserve the business of the broker dealer, we needed to position it in fresh and clean hands" (Tr. at 23:4-6).[1]

---

[1] The undersigned is unaware of any FINRA or Exchange Act Rule requiring a broker-dealer or its parent to notify the regulator of an unsatisfied judgment against the parent. To Blum's knowledge no notice of the award's issuance was ever given to a regulator despite the approximate 20-month gap between issuance of the partial final award against Westwood Capital in December 2018 and payment thereof in October 2020 (Affirmation of Lainie E. Cohen, Esq., dated October

3

18. No effort was made to market the Debtor's interests in Westwood Capital prior to the transfer. (Tr. at 21:11-22:5.)

19. Instead, the Debtor's "executive committee," comprised of Alpert, Messersmith and Cabanos, negotiated the Agreement on behalf of the Debtor with QCH; and the same persons also negotiated the Agreement on QCH's behalf. (Tr. at 25:20-26:5.)

20. Each member of the Debtor also executed a resolution approving the transfer to QCH pursuant to the Agreement, annexed hereto as <u>Exhibit 6</u>.

21. Under Section 8.03 of the Agreement, the notice parties for the Debtor are Alpert and Lazare Potter Giacovas & Moyle LLP ("<u>LPGM</u>"), the Debtor's and Westwood Capital's counsel in the arbitration; and the QCH notice parties are Messersmith and Michael Conway of Offit Kurman, P.A., the Debtor's counsel herein.[2]

22. The transfer bears multiple badges of fraud, under section 4(sb) of the Uniform Fraudulent Transfer Act. *See also MFS/Sun Life Trust High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995) (listing badges). "The existence of several badges of fraud constitutes clear and convincing evidence of actual intent." *In re Saba Enterps., Inc.*, 421 B.R. 626, 644 (Bankr. S.D.N.Y. 2009).

---

28, 2020, annexed hereto as <u>Exhibit 5</u>), and despite Westwood Capital's having offered no substantive defense to payment in its answer to Blum's petition to confirm. This is not a fraudulent conveyance defense in any event. *See In re TransCare Corporation*, No. 18-1021 (SMB), 2020 WL 8021060 (Bankr. S.D.N.Y. July 6, 2020) (entering judgment in plaintiff's favor on actual fraudulent conveyance claim resulting from strict foreclosure on debtor's profitable assets, where debtor's owner also owned the foreclosing lender, notwithstanding the owner's determination that a sale of the debtor "was not feasible, due … to the rapidly deteriorating financial condition of the company and the need for an immediate infusion of a substantial amount of cash that was not readily available").

[2] Westwood Capital paid Offit Kurman's attorneys' fees for filing this case. (Tr. at 30:8-13.)

4

B.  **The Transfer is Avoidable as a Constructive Fraudulent Conveyance**

23. The transfer lacks good faith under Debtor and Creditor Law § 272, in that it was made to an entity owned entirely by insiders. *Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*, 135 A.D.3d 477, 478 (1ˢᵗ Dep't 2016) ("The requirement of good faith is not fulfilled through preferential transfers … to directors, officers or shareholders of a corporation that is, or later becomes, insolvent, in derogation of the rights of general creditors").

24. Westwood Capital's pre-transfer financials (Exhibit 4, WMCH 25 000244-49) also reflects that the value of the Debtor's equity interests in Westwood Capital far exceeded its liabilities shortly before the transfer.

C.  **Blum Has a Valid Veil Piercing Claim against QCH**

25. "Generally, a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect of the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 18 (2015). These elements are plainly satisfied for reasons set forth above.[3]

## ARGUMENT

I.  **DISMISSAL IS WARRANTED**

A.  **Cause Exists under Section 707(a)**

26. "[T]he determination of whether cause exists is left to the discretion of the bankruptcy court." *In re Murray*, 900 F.3d 53, 57 (2d Cir. 2018).

---

[3] A veil piercing claim would not be subject to dismissal as duplicative of fraudulent conveyance claims. *Cortlandt Street Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 46, 49 (2018).

27. The same factors that warranted dismissal in *Murray* warrant dismissal herein. The Court is the most recent battlefield in a longstanding two party dispute; the fraudulent conveyance and breach of fiduciary duty issues presented herein can be addressed in state court; the Debtor commenced this case solely to stay enforcement and judgment discovery proceedings; no assets would be lost or dissipated were this case dismissed, the Debtor having transferred substantially all of its assets over a year ago; the Debtor is ineligible for a discharge; and this case serves no recognizable bankruptcy purpose. *See id*. at 57-58.

28. Further, dismissal would advance the public interest; and a contrary result "would divert the valuable resources and attention of specialized bankruptcy courts to matters intended to be addressed in state court." *Id*. at 63.

**B. Dismissal is Warranted as a Discovery Sanction**

29. The Rule 2004 Order (ECF Doc. #9) commanded production of all communications concerning the transfer, including with LPGM (ECF Doc. #6-2, ¶1); and the subpoenas issued thereunder (ECF Doc. #8-1, Schedule ¶3; ECF Doc. #8-2, Schedule ¶4) commanded production of similar documents by QCH and Westwood Capital.

30. Despite a telephonic meet-and-confer concerning their non-production among the undersigned, Michael Conway on behalf of the Debtor and Robert Giacovas and Lainie Cohen on behalf of Westwood Capital and QCH held December 23, 2020, to date they have refused to produce a single responsive document, nor a privilege log. (Chubak Certification ¶¶1-2.)

31. LGPM, which produced all documents actually produced to Blum on behalf of the Debtor, as well as QCH and Westwood Capital, refused to produce communications on the ground that there is no fraudulent conveyance cause of action because fair consideration was allegedly given. (ECF Doc. #19.) And the Debtor has refused to produce communications on the ground that it "did not, as far as I know, maintain an email server … any review of the Westwood Capital

'.PST files' is something for you and Robert to work out"; and also, the emails were "not relevant to my engagement as chapter 7 bankruptcy attorney." (*See* Exhibit 7 hereto.)

32. Rule 37(b)(2)(A) provides: "[i]f a party or a party's officer [or] director … fails to obey an order to provide or permit discovery … the court … may issue further just orders. They may include the following … (v) dismissing the action or proceeding in whole or in part." "A … court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2)." *Daval Steel Products v. M/F Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

33. "Severe sanctions 'are justified … when the failure to comply … is due to willfulness or bad faith.'" *Id*. (quoting *SEC v. Razmilovic*, 738 F.3d 14, 24 (2d Cir. 2013)).

34. There can be little doubt the above-described refusal to produce communications commanded by the Rule 2004 Order and subpoenas issued thereunder is willful and in bad faith and serves to prejudice Blum's investigation of his only source of recovery.

## II. DISMISSAL SHOULD NOT BE CONDITIONED ON BLUM PAYING THE TOGUT FIRM'S ACCRUED FEES

35. By letter, dated April 1, 2021, the Trustee asked to "be heard to address a procedure by which administrative claims can be satisfied in connection with, and as a condition to, dismissal of this case." (ECF Doc. #26.)

36. At the telephonic chambers conference held April 9, 2021, Mr. Berger clarified that he was asking that dismissal be conditioned on Blum's payment of the Togut firm's accrued fees, estimated by Mr. Berger to be $50,000.

37. Mr. Berger further stated that dismissal without payment of his firm's fees would be inappropriate because Blum benefited from the Trustee's work. That is false. None of the documents produced to Blum herein came from the Trustee; rather, all documents received by

7

Blum herein were produced by the Debtor, QCH or Westwood Capital in response to Blum's own Rule 2004 discovery. (Chubak Certification ¶3.)

38. Moreover, the Trustee was on notice from the outset that there was substantial likelihood that this case would be dismissed for cause. Blum's undersigned counsel advised Mr. Berger as much in their earliest conversations (id. ¶4); and repeated as much to the Trustee and Mr. Berger at the 341 hearing. (Tr. at 32:20-22.)

39. Dismissal will not serve to prevent the Trustee from exercising setoff rights with respect to the debtor's cash in his custody upon dismissal, or obtaining judgment on account of his firm's allowed fees from this Court and thereafter exercising enforcement remedies pursuant to CPLR Article 52, pursuant to Rule 69(a).

40. Despite request Mr. Berger has been unable to share any authority providing for conditioning dismissal on a creditor's paying the Trustee's firm's unsatisfied administrative expenses.

WHEREFORE, the Court should dismiss this case and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 16, 2021

AMINI LLC

/s/ Jeffrey Chubak
Jeffrey Chubak
Noam Besdin
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
jchubak@aminillc.com
nbesdin@aminillc.com
*Attorneys for Creditor Leonard Blum*