Togut, Segal & Segal LLP                    **Hearing Date: July 20, 2021 at 10:00 a.m.**
*Attorneys for Albert Togut*
*Not Individually But Solely in His Capacity*
*as the Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Eitan Blander

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                            :
In re:                         :        Chapter 7
                            :
WMCH 25 HOLDINGS, LLC,     :
d/b/a Westwood Capital Holdings, LLC,  :        Case No. 20-12534 (SCC)
                            :
                Debtor.      :
                            :
----------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S (I) OBJECTION TO BLUM MOTION TO
DISMISS CASE AND (II) APPLICATION FOR AN ORDER APPROVING
<u>STIPULATION SETTLING ESTATE CLAIMS AGAINST WESTWOOD PARTIES</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................2

RELIEF REQUESTED..............................................................................................4

JURISDICTION AND VENUE ..................................................................................4

BACKGROUND ........................................................................................................4

    A. Prepetition Blum Litigation...............................................................................4

    B. The Prepetition Westwood Transfer..................................................................6

    C. Chapter 7 Case Procedural History ...................................................................6

    D. Potential Avoidance and Recovery Claims........................................................9

    E. The Stipulation and Claims Settlement ...........................................................10

BASIS FOR RELIEF ...............................................................................................12

    I. BLUM'S MOTION TO DISMISS SHOULD BE DENIED....................................12

    II. THE STIPULATION SHOULD BE APPROVED ....................................................19

    A. The Stipulation is Fair and Reasonable ...........................................................19

    B. The Stipulation Should Be Approved Notwithstanding That Blum Does Not
       Support It .........................................................................................................27

CONCLUSION.........................................................................................................29

NOTICE....................................................................................................................29

NO PRIOR REQUEST .............................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Westwood Capital Holdings, LLC*, Index No. 651721/2020 ........................................ 3

*Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC*, 476 B.R. 60 (E.D.N.Y. 2012) .............. 13

*Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599 (2d. Cir. 1983) ................................. 23

*Cosoff v. Rodman*, 699 F.2d at 607-08 .................................................................................... 23

*Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) ................................... 21

*In Re Adelphia Communications Corp.*, 327 B.R. 143 (Bankr. S.D.N.Y. 2005) ........................ 24

*In re Aupperle*, 352 B.R. 43 (Bankr. D.N.J. 2005) ................................................................. 20

*In re Chovev*, 559 B.R. 339 (Bankr. E.D.N.Y. 2016) ........................................................ 13, 14

*In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991) ................... 23

*In re Enron Corp.*, 2003 WL 230838 (S.D.N.Y. Jan. 31, 2003) ............................................. 22

*In re Gallman*, 6 B.R. 1 (Bankr. N.D. Ga. 1980) ................................................................. 20

*In re Hall*, 15 B.R. 913 (B.A.P. 9th Cir. 1981) .................................................................... 18

*In re Hibbard Brown & Co., Inc.*, 217 B.R. 41 (Bankr. S.D.N.Y. 1998) ................................. 21

*In re Hilsen*, 404 B.R. 58 (Bankr. E.D.N.Y. 2009) ...................................................... 29, 30, 31

*In re In re Dewey & Leboeuf L.L.P.*, 478 B.R. 627 at 642 (Bankr. S.D.N.Y. 2012) ................... 30

*In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007) .................................................... 23

In re Kaplan Breslaw Ash, LLC, 264 B.R. 309 (Bankr. S.D.N.Y. 2001) ................................. 16

*In re Kaur*, 510 B.R. 281 (Bankr. E.D. Cal. 2014) ............................................................... 20

*In re Klein*, 39 B.R. 530 (Bankr. E.D.N.Y. 1984) ............................................................ 17, 19

*In re Livecchi*, 2014 WL 6655702 (Bankr. W.D.N.Y. Nov. 20, 2014) .................................... 15

*In re LLC 1 07CH12487*, 608 B.R. 830 (Bankr. N.D. Ill. 2019) .............................................. 12

*In re LLC 1*, 608 B.R. at 848 ...................................................................................... 17, 19

*In re Martinez-Held*, 2006 WL 2882494 (Bankr. S.D. Fla. June 16, 2006) ............................. 19

*In re Murray*, 543 B.R. 484 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018) .................................................................. 15

*In re Murray*, 900 F.3d 53 (2d Cir. 2018) .......................................................................... 13

*In re Pinnick*, 598 B.R. 206 (Bankr. W.D. Pa. 2019) .......................................................... 19

*In re Riverside-Linden Inv. Co.*, 99 B.R. 439 (B.A.P. 9th Cir. 1989, *aff'd* 925 F.2d 320 (9th Cir. 1991) .................................................................................................. 18

*In re Rose*, 86 B.R. 439 (Bankr. E.D. Pa. 1988) ................................................................. 13

*In re Rose,* 86 B.R. 439 (Bankr. E.D. Pa. 1988) ......................................................................18

*In re Ross,* 21 B.R. 5 (Bankr. E.D.N.Y. 1982) .........................................................................18

*In re Smith,* 507 F.3d 64 (2d Cir. 2007) ..................................................................................12

*In re Southeast Banking Corp.,* 314 B.R. 250 (Bankr. S.D. Fla. 2004) ...................................30

*In re Syndicom Corp.,* 268 B.R. 26 (Bankr. S.D.N.Y. 2001) ....................................................15

*In re Todd,* 2015 WL 5042116 (Bankr. N.D. Ga. Aug. 6, 2015) ..............................................20

*In re Uche,* 555 B.R. 57 (Bankr. M.D. Fla. 2016) ....................................................................15

*In re Zimmer,* 623 B.R. 151 (W.D. Penn. 2020) .......................................................................12

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC),*
478 F.3d 452 (2d Cir. 2007) ..................................................................................................22

*Nellis v. Shugrue,* 165 B.R. 115 (S.D.N.Y. 1994) ....................................................................21

*Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.),* 857 F.2d 1061 (5th Cir. 1988) ......12

*Plaza Equities LLC v. Pauker (In re Copperfield Invs., LLC),* 401 B.R. 87
(Bankr. E.D.N.Y. 2009). ........................................................................................................23

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
390 U.S. 414 (1968) ...............................................................................................................23

**Statutes**

28 U.S.C. § 157(b) ........................................................................................................................4

28 U.S.C. §§ 1408 and 1409 ........................................................................................................4

28 U.S.C. §§ 157 and 1334 ..........................................................................................................4

**Rules**

NYCPLR § 5229 .......................................................................................................................5, 6

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as Chapter 7 trustee (the "Trustee") of the estate (the "Estate") of WMCH 25 Holdings, LLC, the debtor (the "Debtor") in the above-captioned case (the "Case"), by his attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), respectfully submits:  (I) this objection (the "Objection") to the *Motion to Dismiss Case* (the "Motion to Dismiss") filed by Leonard Blum ("Blum") [Docket No. 27];  and (II) this application (the "Application") for entry of an order (the "Proposed Order") approving the *Stipulation and Agreed Order Settling Claims* annexed hereto as **Exhibit "A"** (the "Stipulation") by and among the Trustee, on the one hand, and Westwood Capital, LLC ("Westwood Capital"), Quarter Century Holdings LLC ("Quarter Century"), Daniel Alpert ("Alpert"), Jon Messersmith ("Messersmith"), Keiki-Michael Cabanos ("Cabanos"), Paul Tanico ("Tanico"), Ellen Adams ("Adams" and, together with Alpert Messersmith, Cabanos, and Tanico, the "Westwood Members"), and Adams GST Exempt Trust ("Adams Trust," and together with Westwood Capital, Quarter Century, and the Westwood Members, the "Westwood Parties"), on the other, pursuant to sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure Rules (the "Bankruptcy Rules").  In support of the Objection and the Application, the Trustee respectfully submits the Declaration of Neil Berger, a member of the Togut Firm, annexed hereto as **Exhibit "B"** and incorporated herein by reference. In further support of this Objection and Application, the Trustee respectfully states:

## PRELIMINARY STATEMENT

Nearly seven years ago, Blum began litigation against the Westwood Parties before the Arbitration Panel, then moved that litigation to the New York State Court, and now those parties are litigating in this Court. Pleadings filed in the prepetition litigation disclose that Blum and the Westwood Parties incurred fees and expenses of approximately $2 million.[1] The result of that costly litigation: Blum obtained an award against Westwood Capital in the amount of $234,500, which was paid in full prior to the Petition Date, plus interest, and he was awarded legal fees and expenses of $532,732.49, which represents his claim against the Debtor in this Case. The Arbitration Panel dismissed all of Blum's claims against Westwood Members individually.

Blum obtained entry of the Blum Rule 2004 Order and conducted discovery of the Westwood Parties in this Case and now seeks an order dismissing the Case to enable him to continue his years'-long litigation against the Debtor and the Westwood Parties. In doing so, Blum seeks to multiply that litigation by requiring the Trustee and the Togut Firm to join the state court litigation to sue the Westwood Parties to seek compensation for work that was statutorily required to have been done in this Case.

When the parties last participated in a Chambers teleconference in this Case, the Court urged the parties to try to settle unresolved issues and address the needs of the Debtor's estate. This Court's request for a consensual resolution was consistent with the prepetition admonition to Blum and the Westwood Parties by the

---

[1]   The Arbitration Panel's administrative fees and compensation claims totaled $275,107.18.

New York State Supreme Court, New York County (the "New York State Court"):  "The court *again* urges the parties to resolve this matter and issues this clarification without waiting to hear from the parties so that negotiations are not delayed . . . ."  *See Blum v. Westwood Capital Holdings, LLC*, Index No. 651721/2020 (Sup. Ct., NY County Sept. 11, 2020) (emphasis supplied).

Heeding the urgings of two Courts, and in compliance with the mandates contained in Bankruptcy Code section 704, the Trustee conducted an extensive investigation of the Debtor's affairs to determine what, if any, claims exist in favor or the Debtor's estate against the Westwood Parties.  Throughout his investigation, the Trustee sought to broker a global settlement, and he has achieved a $250,000 settlement among all of the parties, with exception only to Blum, who has advised the Court that "at this time there is no agreement to negotiate" [Docket No. 30].

Instead, without citing any relevant authority, Blum asks this Court to dismiss the Case.  In doing so, he asks this Court to exercise its discretion in a manner that would contradict its prior urging for a settlement, and that of the New York State Court, and that would also contradict public policy, which encourages settlements.

The Trustee respectfully submits that dismissal of the Case in the manner sought by Blum is inappropriate,  Instead, the Trustee respectfully submits that the proposed settlement contained in the Stipulation is appropriate because it:  (a) provides a substantial recovery on account of alleged causes of action and defenses that have been extensively examined by the Trustee and his professionals;  (b) meaningfully responds to all of the Estate stakeholders' claims and interests;  and (c) eliminates further litigation.

Under these circumstances, the Trustee respectfully requests that the Court enter an order denying the Dismissal Motion, and enter an order approving the Stipulation.

**RELIEF REQUESTED**

1.      The Trustee requests that that the Court:  (i) enter an order denying Blum's Motion to Dismiss;  and (ii) enter the Proposed Order, substantially in the form annexed hereto as **Exhibit "A"**, approving the Stipulation.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction to consider this Application and the relief requested herein pursuant to 28 U.S.C. §§ 157and 1334.  Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are Bankruptcy Code sections 105(a) and Bankruptcy Rule 9019.

**BACKGROUND**

A.      **Prepetition Blum Litigation**

4.      Blum was a member of the Debtor and an employee of Westwood Capital until 2014.  On December 16, 2014, Blum made a demand for arbitration to the American Arbitration Association (the "Arbitration Panel") pursuant to the terms of the Debtor's Sixth Amended Operating Agreement, and sought recovery of damages based upon alleged breaches of contractual obligations and fiduciary duties from the Westwood Members.  The arbitration was assigned Case No. 01-14-0002-1926 (the "Arbitration Case").

5.     Four years later, on December 17, 2018, the Arbitration Panel issued a partial final award in favor of Blum and against Westwood Capital in the amount of $234,500, and authorized Blum to apply for an award of attorneys' fees and expenses incurred in connection with the Arbitration Case (the "Partial Final Award").  Blum sought attorneys' fees and expenses of totaling $1,055,186.78.  The Westwood Parties sought an aggregate of approximately $855,500 for attorneys' fees and expenses.

6.     On January 22, 2020, the Arbitration Panel issued a final award in favor of Blum (the "Final Arbitration Award") against:  (a) Westwood Capital in the amount of $234,500, as provided in the Partial Final Award (the "Judgment Award"); and (b) the Debtor, in the amount of $532,732.49, on account of attorneys' fees and expenses allowed by the arbitration panel (the "Fee Award").  The Arbitration Panel dismissed all of Blum's claims against the Westwood Members.

7.     Approximately one month after the Final Arbitration Award was issued, on February 25, 2020, the Debtor consummated the Westwood Transfer (defined below) and transferred its ownership interest in Westwood Capital, its wholly-owned broker-dealer subsidiary, to Quarter Century.

8.     Following entry of the Final Arbitration Award, Blum petitioned the New York State Court to confirm the Final Arbitration Award and authorize discovery of the Debtor and Westwood Capital pursuant to NYCPLR § 5229 pending confirmation of the Final Arbitration Award.

9.     On October 23, 2020, the New York State Court entered a decision and order (the "New York State Court Order") confirming the Final Arbitration Award and directing entry of judgment in Blum's favor against Westwood Capital and the Debtor in the amounts awarded under the Final Arbitration Award, plus interest from

the date of the Final Arbitration Award, plus disbursements and costs, and directing compliance with discovery requests pursuant to CPLR § 5229.

10.     Westwood Capital made full payment of the $234,500 Fee Award, plus all post-award interest of $16,632.62, to Blum in satisfaction of the Judgment Liability in September and October 2020.

**B.     The Prepetition Westwood Transfer**

11.     Westwood Capital is an SEC-registered and FINRA-regulated broker-dealer firm that is a wholly-owned subsidiary of the Debtor.  A chart displaying the Debtor and its affiliates is annexed hereto as **Exhibit "C"**.

12.     Following entry of the Final Arbitration Award and prior to the Petition Date (defined below), the Debtor transferred its interest in Westwood Capital to Quarter Century (the "Westwood Transfer") pursuant to a Purchase and Sale Agreement dated February 25, 2020 (the "Purchase and Sale Agreement").  Quarter Century was formed on February 11, 2020, two weeks before the Westwood Transfer was consummated.

13.     As of the date of the Westwood Transfer, the Westwood Members were the owners and members of the Board of Managers of the Debtor.  At the same time, certain Westwood Members - Alpert, Messersmith, and Cabanos - were also owners and members of the Board of Managers of Quarter Century.

**C.     Chapter 7 Case Procedural History**

14.     On October 28, 2020 (the "Petition Date"), the Debtor commenced the above-captioned Case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition") in this Court.

15.     In the schedules of assets and liabilities ("<u>Schedules</u>") that were filed with the Petition, the Debtor listed general unsecured liabilities of approximately $850,000.

16.     On October 29, 2020, Albert Togut was appointed as the Chapter 7 interim trustee of the Debtor.

17.     The Debtor's Bankruptcy Code section 341 meeting of creditors was conducted on December 15, 2020 (the "<u>341 Meeting</u>").  Alpert appeared as the Debtor's representative at the section 341 meeting of creditors, and he was examined under oath by the Trustee, the Togut Firm, and Blum.  At the conclusion of the 341 Meeting, Mr. Togut became the permanent trustee of the Debtor pursuant to Bankruptcy Code section 702(d);  he duly qualified and is the Trustee of the Debtor.

18.     By an Order dated November 23, 2020, the Court authorized the Trustee to retain the Togut Firm as his attorneys (the "<u>Togut Retention Order</u>") [Docket No. 11].

19.     Blum was aware of the Trustee's application to retain the Togut Firm and he did not object to it.  Moreover, prior to entry of the Togut Retention Order, the Trustee proposed to retain Blum's counsel as his special to conduct an investigation of and pursue estate claims on a contingency fee basis, but Blum declined that proposal.

20.     On November 10, 2020, Blum filed his *Application for Rule 2004 Examination of the Debtor, Quarter Century Holdings LLC, Westwood Capital, LLC, Daniel Alpert, Paul Tanico, Ellen Adams and Keiki-Michael Cabanos* [Docket No. 6] (the "<u>Blum 2004</u>

Motion"), which was granted by an amended order dated November 17, 2020 [Docket No. 9] (the "Blum Rule 2004 Order").[2]

21.    On January 20, 2021, the Trustee filed his *Ex Parte Application Pursuant to Bankruptcy Rule 2004 for an Order Authorizing the Issuance of Subpoenas* [Docket No. 20] (the "Trustee 2004 Motion") seeking an order authorizing the Trustee to serve Rule 2004 subpoenas on non-Debtor parties.  On January 20, 2021, the Court entered an order granting the Trustee's 2004 Motion and authorized the Trustee to serve 2004 subpoenas for production of documents and for deposition testimony "concerning any asset, liability, duty, obligation, contract, transaction, or other issue related in any way to the Debtor, upon:  any current or former member, affiliate, employee, agent, or representative of the Debtor; any person that has conducted business or engaged in a transaction with the Debtor, in any manner, and any current or former member, employee, principal, agent, officer, shareholder, affiliate or owner thereof; any accountant or financial advisor for the Debtor, and any current or former member, employee, principal, agent, officer, or owner thereof" [Docket No. 21] (the "Trustee Rule 2004 Order").

22.    As described below, the Trustee demanded, obtained and analyzed numerous documents from the Westwood Parties pursuant to the Trustee Rule 2004 Order.  The Westwood Parties have represented in the Stipulation that they have fully complied with the Trustee's demands for documents and information.

23.    The Clerk of this Court fixed March 29, 2021 (the "Claims Bar Date") as the last date for creditors of the Debtor to file timely proofs of claim in this

---

[2]    The Rule 2004 order that was submitted by Blum was consensually amended to permit the Trustee to attend and participate during any depositions taken by Blum pursuant to the Blum Rule 2004 Order.

Case. As of the date hereof, Blum is the only prepetition creditor of the Debtor that has filed a timely proof of claim.

24. On April 16, 2021, Blum filed the Motion to Dismiss [Docket No. 27] for an order dismissing the Chapter 7 Case on the grounds that (a) the Case is a "two-party dispute" or, alternatively, (b) dismissal is warranted as a discovery sanction based upon alleged discovery failures of Westwood Capital and Quarter Century in connection with document demands made by Blum pursuant to the Blum Rule 2004 Order.

**D.    Potential Avoidance and Recovery Claims**

25. Pursuant to the Purchase and Sale Agreement, the Debtor transferred its 100% ownership interest in Westwood Capital in exchange (together, the "Purchase Price") for: (a) $10 in cash to be paid at closing; (b) assumption by Quarter Century of the Debtor's remaining obligations to 5th Avenue LLC, the Debtor's landlord (the "Landlord") under a lease for office space (the "Lease") dated October 18, 2004, which was assigned by Westwood Capital to the Debtor by an agreement dated November 1, 2008 (the "Lease Liability"); and (c) assumption of payment obligations owed by Westwood Capital to Blum pursuant to the Final Arbitration Award, in the amount of $234,500 (the "Judgment Liability").

26. Under the Purchase and Sale Agreement, the Purchase Price could be adjusted by two "Independent Valuation Reports," the average of which would determine the "Valuation Price" of the equity of Westwood Capital. If the average Valuation Price exceeds the Purchase Price, then Quarter Century, as buyer, would be obligated to pay the Debtor the amount by which the Valuation Price exceeds the Purchase Price. Alternatively, if the Purchase Price exceeds the Valuation Price, the

Debtor, as seller, would owe that difference to Quarter Century (the "<u>Overage</u>"). *See* Motion to Dismiss, Exh. "4".

27.     Only one valuation report (the "<u>Mercer Valuation Report</u>") was prepared in connection with the Westwood Transfer.  The Mercer Valuation Report concluded that the equity of Westwood Capital had a Valuation Price of $506,700.  The Mercer Valuation Report valued the assumption of the Lease Liability at $622,500, and the assumption of the Judgment Liability of $234,500 (totaling $857,000).  As a result, the Mercer Valuation Report concluded that the Purchase Price exceeded the Valuation Price of the Westwood Capital equity, resulting in an Overage of approximately $350,000 in favor of Quarter Century.[3]

28.     The Trustee has asserted that:  (A) avoidance claims may be asserted against Quarter Century and the Westwood Parties on behalf of the Estate (i) to avoid the Westwood Transfer and (ii) avoid and recover transfers made by or on behalf of the Debtor to and for the benefit of the Westwood Parties;  and (B) claims for damages based upon alleged breaches of fiduciary duties (the "<u>Breach of Duty Claims</u>") by Westwood Parties may exist and form the bases for Estate recoveries.

   E.     **The Stipulation and Claims Settlement**

29.     Following extensive discovery, analysis and negotiations, the Trustee and the Westwood Parties have executed the Stipulation, annexed hereto as **Exhibit "A,"** which provides for settlement and resolution of all claims and causes of

---

[3]     The Debtor failed to schedule Quarter Century as a creditor holding a contingent claim.

action in favor of the Estate against the Westwood Parties (the "Estate Claims"). The material terms of the Stipulation are:[4]

- On the later than ten (10) days following the Effective Date and September 15, 2021, the Westwood Parties will pay $250,000 (the "Settlement Payment") to the Trustee in full and final satisfaction of the Estate Claims;

- Upon receipt of the Settlement Payment (the "Completion Date") the Trustee will promptly provide the Westwood Parties with written confirmation that the Settlement Payment has been received (the "Settlement Receipt");

- Upon the Completion Date, the following releases will become effective:

  o The Trustee, on behalf of the Estate, will release, acquit, and discharge each of the Westwood Parties, and their predecessors as well as their respective officers, directors, agents, representatives, attorneys, heirs, successors, and assigns, past and present, and each of them from any claims, damages, actions, suits, causes of action, rights, liens, demands, obligations, and/or liabilities in favor of the Debtor's Estate; and

  o Each of the Westwood Parties will release, acquit, and discharge the Trustee and his retained professionals, the Debtor and its Estate, of and from any and all claims, damages, actions, suits, causes of action, rights, liens, demands, obligations, and/or liabilities arising from or relating to the Chapter 7 Case;

- In the event that the Westwood Parties fail to timely pay the Settlement Payment, or the Settlement Payment, or any portion of it, is dishonored by the Trustee's bank, counsel for the Trustee will send a written default notice by electronic and first-class mail to the Westwood Parties' counsel listed below. If the Westwood Parties

---

[4] This summary of the Stipulation is provided for the convenience of the Court and parties in interest. In the event of any inconsistency between the summary in this Application and the terms of the Stipulation, the terms of the Stipulation shall govern.

fail to cure such default within ten (10) days after the notice of default is sent, counsel for the Trustee may submit the consent judgment attached to the Stipulation as Exhibit "A" (the "Consent Judgment") to the Court, with a declaration which will list (i) first, total any amounts paid by the Westwood Parties pursuant to the Stipulation, then subtract such payments from the aggregate amount of the Settlement Payment ($250,000), and then identify the resulting sum as the "Default Amount,"  (ii) state that the Westwood Parties have failed to timely cure the default, and (iii) request that the Consent Judgment be entered in the Case in the Default Amount;  and

- Following the Completion Date, the Trustee will promptly return the original executed Consent Judgment to the Westwood Parties.

**BASIS FOR RELIEF**

**I.      BLUM'S MOTION TO DISMISS SHOULD BE DENIED**

30.      Pursuant to section 707(a), a bankruptcy court "may dismiss a case . . . only after notice and a hearing and only for cause. . ."  *In re Smith*, 507 F.3d 64, 72 (2d Cir. 2007).   Courts determine "whether cause exists by looking at whether dismissal would be in the best interest of all parties."  *In re Smith*, 507 F.3d at 72 (internal quotation marks omitted).  "Any party in interest may move for dismissal under section 707(a)."  *In re LLC 1 07CH12487*, 608 B.R. 830, 849 (Bankr. N.D. Ill. 2019) ("LLC 1").

31.      However, "[t]here is no absolute right of a party-in-interest to obtain dismissal of a chapter 7 bankruptcy case."  *See In re Zimmer*, 623 B.R. 151 (W.D. Penn. 2020).  For example, courts have held that if "dismissal would prejudice the creditors, then [the motion to dismiss] will ordinarily be denied." *See Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.),* 857 F.2d 1061, 1063 (5th Cir. 1988) (citing *In re Williams,* 15 B.R. 655 (E.D. Mo. 1981)).

32.     A bankruptcy court's decision to dismiss a case for cause under Section 707(a) is guided by equitable considerations and is committed to the sound discretion of the bankruptcy court. *In re Murray*, 900 F.3d 53, 57 (2d Cir. 2018) ("Murray") (citing *In re Smith*, 507 F.3d at 73); *see also Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC,* 476 B.R. 60, 67 (E.D.N.Y. 2012) ("A bankruptcy court has discretion to determine what additional circumstances, not enumerated in the statute, may constitute cause").

33.     Blum bears the burden of demonstrating sufficient "cause" for an exercise of the Court's discretion to dismiss the Debtor's Case, but he has failed to do so. "Without some countervailing evidence offered by the proponent of the motion to dismiss, on whom the burden of persuasion falls" a motion to dismiss will not be granted. *See In re Chovev*, 559 B.R. 339, 343 (Bankr. E.D.N.Y. 2016); *In re Rose*, 86 B.R. 439, 442 (Bankr. E.D. Pa. 1988).

34.     Blum argues that the Case should be dismissed for cause because he believes it is a "two-party dispute" between the Debtor and Blum and that the case was filed for an improper purpose.  However, Blum has failed to provide any relevant authority or precedent demonstrating that courts must dismiss a chapter 7 case in circumstances similar to this Case, especially when a chapter 7 trustee objects to dismissal and when dismissal is not conditioned on payment of administrative fees. Indeed, courts have concluded that the presence of a two-party dispute is not alone a sufficient basis to establish cause for dismissal.

35.     Blum's single citation to *Murray* for support is misplaced.  In *Murray*, an involuntary petition was filed against an individual debtor with the undisputed purpose of "tak[ing] advantage of bankruptcy remedies that would allow it

to force a sale of the apartment—notwithstanding Murray's wife's interest, which would be recognized after the sale—rather than state law remedies that would permit it to execute on *Murray's* interest only." *Id.* at 56. The *Murray* Court granted the debtor's dismissal motion, which was affirmed on appeal to the District Court and Second Circuit. Notably, the debtor in the *Murray* case, and not a creditor, sought dismissal. Moreover, *Murray* did not implicate a two-party dispute analysis.

36.     The facts and considerations addressed in *Murray* bear no resemblance to this Case. Blum also argues that dismissal is warranted because the Debtor allegedly commenced this case "solely to stay enforcement and discovery proceedings." Motion to Dismiss at ¶27. However, there are no facts in evidence to establish that the Debtor's chapter 7 Petition represents a misuse of the Bankruptcy Code.

37.     Seeking bankruptcy relief to ward off or stay collection efforts does not constitute "cause" for dismissal pursuant to Bankruptcy Code section 707. Indeed, debtors frequently seek bankruptcy relief in the face of judgments that will render them insolvent or to ward off collection efforts. *See, e.g, In re Chovev*, 559 B.R. 339, 347 (Bankr. E.D.N.Y. 2016) ("Filing to ward off collection efforts, however, is not, in and of itself, sufficient to establish cause under § 707(a)."); *In re Uche*, 555 B.R. 57, 63 (Bankr. M.D. Fla. 2016) (denying motion to dismiss under section 707(a) as a bad faith filing and stating that "if filing bankruptcy to avoid the payment of a debt was cause for dismissal, no debtor could ever be able to file a bankruptcy case."). Moreover, the *Murray* case was dismissed before a trustee was appointed, such that the *Murray* court was not required to consider how administrative fees and expenses would be addressed in a dismissal.

38.     Blum's focus on its status as the Debtor's primary creditor and the fact that the Debtor is not entitled to a discharge are also misplaced. *See In re Livecchi*, 2014 WL 6655702, at *2 (Bankr. W.D.N.Y. Nov. 20, 2014) ("the fact that there is only one significant creditor—or that the debtor is ineligible for a discharge—is not cause for dismissal.") (citing 6 Collier on Bankruptcy ¶ 707.03[2] (16th ed. rev.)).

39.     Additionally, even if the Court were to find that the Debtor's filing was made in bad faith, that finding would not require dismissal. *See, e.g., In re Syndicom Corp.,* 268 B.R. 26, 55 (Bankr. S.D.N.Y. 2001) (debtor's filing of petition was found to have been made in bad faith, warranting cause for both stay relief and dismissal, however bankruptcy court considered stay relief the preferable remedy under the circumstances); *see also In re Murray*, 543 B.R. 484, 491 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018) (citing *In re Eclair Bakery Ltd.*, 255 B.R. 121, 131–32 (Bankr. S.D.N.Y. 2000) and *In re Kaplan Breslaw Ash, LLC,* 264 B.R. 309, 335 (Bankr. S.D.N.Y. 2001)).

40.     In cases where courts have found that keeping a chapter 7 case open served a purpose, they have expressed a preference not to dismiss the case. Recently, in *LLC 1,* the bankruptcy court ruled that the chapter 7 case was a two-party dispute. 608 B.R. at 849. However, that court determined not to dismiss the debtor's case because allowing the Chapter 7 trustee to investigate and attempt to recover avoidable transfers were legitimate purposes of keeping the case open. The *LLC 1* court ruled that the trustee is in the "best position to determine what steps are appropriate in this regard in light of the Trustee's duties to both the creditors and the Debtor [under] 11 U.S.C. § 704(a)(1) . . . [which] involves balancing the interests of the Debtor, creditors and other parties in interest." *Id.*

41.     Pursuant to Bankruptcy Code section 704, trustees are statutorily required to, among other things, "expeditiously" investigate debtors' financial affairs and to attempt to avoid and recover transfers.  Moreover, Bankruptcy Code section 327 authorizes trustees to retain professionals to assist in the administration of the estate. Pursuant to the Bankruptcy Code sections 326, 330 and 331, chapter 7 trustees and their professionals are entitled to seek compensation and reimbursement of expenses.

42.     The Trustee was appointed in October 2020 and obtained approval to retain the Togut Firm in November 2020.  The Trustee and Togut Firm and engaged in months of diligence, investigations, document review, and negotiations with the Debtor, Blum, and certain of the Westwood Parties, before Blum filed the Motion to Dismiss in April 2021.

43.     During the nine months since the Petition Date, the Estate has incurred administrative expenses in connection with the Trustee's investigations of the Debtor's financial affairs and those administrative expenses must be considered in evaluating alternatives for the Case.

44.     Blum's suggestion that the Trustee should not have worked with his retained professionals to discharge his statutory obligations pursuant to Bankruptcy Code section 704 until after the Bar Date expired is unsupported by any statutory or case law authority.  The Trustee respectfully submits that Blum's proposition is divorced from the reality of how trustees are required to timely and "expeditiously" discharge their duties, and it should be rejected by the Court, especially because Blum has been aware of the Trustee's efforts since his appointment.

45.     Despite Blum's insistence to the contrary, the Trustee and the Togut Firm are parties in interest in this Chapter 7 Case.  "[An] asset must be pursued first

and foremost for the benefit of the estate—not at the behest of [the sole creditor]—and only if it is in the interests of the estate creditors *including, but not necessarily limited to [the sole creditor], the Trustee and the Trustee's professionals."* *See In re LLC 1,* 608 B.R. at 848 (emphasis added); *In re Klein,* 39 B.R. 530, 533 (Bankr. E.D.N.Y. 1984) ("The trustee as representative of the estate, see 11 U.S.C. § 323, has expended time and effort in examining into the affairs of the debtor and in uncovering potential assets of the estate. A dismissal would render such efforts wasted.").

46.     "The discovery of assets is not cause to dismiss such a proceeding. If anything, it is grounds for retaining jurisdiction, i.e., that creditors who perhaps expected to recover nothing on their claims may be assured of an equitable and full distribution of the debtor's newly discovered assets." *In re Ross,* 21 B.R. 5 (Bankr. E.D.N.Y. 1982).

**Dismissal, If At All, Should Be Conditioned On Payment Of The Trustee's Fees**

47.     It is undisputed that a chapter 7 trustee has standing to object to dismissal of a case "for the purpose of securing his costs and expenses." *See In re Hall*, 15 B.R. 913, 915 (B.A.P. 9th Cir. 1981) (Chapter 7 trustees have standing to object to case dismissal" on the grounds that his fees, costs or expenses must be paid before the case may be dismissed."); *In re Riverside-Linden Inv. Co.,* 99 B.R. 439, 445 (B.A.P. 9th Cir. 1989, *aff'd* 925 F.2d 320 (9th Cir. 1991) (same); *see also In re Rose*, 86 B.R. 439, 441 (Bankr. E.D. Pa. 1988) ("Trustees have long been held to have standing to object to the voluntary dismissal of a bankruptcy case when their fees have not been paid.").

48.     The Trustee respectfully submits that, to the extent that the Court finds that dismissal of the Debtor's Case is warranted, rather than approval of the Stipulation, dismissal should be conditioned on payment of compensation and expenses

to the Trustee and the Togut Firm. *See, e.g., In re LLC 1*, 608 B.R. at 848 ("The Trustee and each of his professionals—counsel and an accountant—are of course potential creditors of the estate based on the compensation they have accrued.").

49. Indeed, courts often deny debtors' requests to voluntarily dismiss Chapter 7 cases when property might be recovered by the trustee. *See In re Pinnick*, 598 B.R. 206, 209 (Bankr. W.D. Pa. 2019) (circumstances warranting the denial of a motion to dismiss are present when the motion to dismiss is prosecuted while a chapter 7 trustee is in the process of liquidating non-exempt assets for the benefit of creditors); *In re Klein*, 39 B.R. 530 at 533 (plain legal prejudice present where creditor's collection efforts are delayed and there is no assurances that debtor's assets would be distributed to creditor body once the bankruptcy court relinquishes jurisdiction).

50. Likewise, courts also frequently condition dismissal of chapter 7 cases on payment of the trustee's administrative fees. *See, e.g. In re Martinez-Held*, 2006 WL 2882494, at *2 (Bankr. S.D. Fla. June 16, 2006) ("The cases cited by the Trustee all recognize that the decision to condition dismissal of a bankruptcy case on the payment of the Trustee's attorneys' fees should be made on a case-by-case basis"); *In re Gallman*, 6 B.R. 1, 2 (Bankr. N.D. Ga. 1980) (finding that the "trustee's attorneys' fees were a necessary and reasonable expense of investigating the estate, and that payment of reasonable and necessary expenses are a prerequisite to allowance of voluntary dismissal"); *see also In re Todd*, 2015 WL 5042116, at *5 (Bankr. N.D. Ga. Aug. 6, 2015) ("the existence of administrative expenses incurred by the Trustee is not a basis to deny Debtor's Motion because the Motion can be granted subject to payment of such expenses."); *In re Kaur*, 510 B.R. 281, 289 (Bankr. E.D. Cal. 2014) ("Under similar circumstances, some bankruptcy courts have dismissed chapter 7 cases conditioned on

the debtor paying the outstanding administrative expenses. . . . The court agrees with the approach taken by those courts."); *In re Aupperle*, 352 B.R. 43, 48 (Bankr. D.N.J. 2005) (granting the debtor's request to voluntarily dismiss her case, "subject to payment of administrative expenses, and allowing the trustee a stay pending appeal.").

51.     While the Trustee asserts that approval of the Stipulation is in the best interests of the Estate, if the Court declines to approve the Stipulation and determines to dismiss the Case, he requests that such dismissal be conditioned upon payment of his commissions and the fees and expenses of the Togut Firm.

52.     Blum's request for case dismissal as a discovery sanction pursuant to Federal Rule 37(b)(2)(A) also misses the mark.

53.     None of the cases cited by Blum in the Motion to Dismiss provide authority or guidance for dismissal of a chapter 7 bankruptcy case based upon an alleged failure to fully comply with a discovery order.  More, the docket does not reflect that Blum ever filed a motion to compel discovery compliance by the Westwood Parties.

54.     Further, case dismissal as a discovery sanction would be inappropriate because such sanction would not be "just" or "relate to the particular claim to which the discovery order was addressed."  *See Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357 (2d Cir. 1991).

## II.     THE STIPULATION SHOULD BE APPROVED

### A.     <u>The Stipulation is Fair and Reasonable</u>

55.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Section 105(a) of the Bankruptcy Code provides that "[t]he

court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]." 11 U.S.C. 105(a).

56. The settlement of disputes is encouraged and generally favored in bankruptcy cases. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *see also In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (the bankruptcy court may exercise its discretion in determining whether to approve a settlement "in light of the general public policy favoring settlements").

57. Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is both (i) fair and equitable, and (ii) in the best interests of the Debtor's estate. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (applying the "fair and equitable" standard to settlements pursuant to Bankruptcy Rule 9019); *In re Enron Corp.*, 2003 WL 230838, at *2 (S.D.N.Y. Jan. 31, 2003) ("A bankruptcy court may approve a settlement where the proposed settlement is both fair and equitable and in the best interests of the estate.") (internal quotations and citations omitted).

58. To evaluate whether a settlement is fair and equitable, courts in the Second Circuit consider factors including the following: (a) the balance between the possibility of success in any litigation and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendance expense, inconvenience, and delay; (c) the paramount interests of creditors, including the relative benefits, and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (d) whether other parties in interest support the settlement; (e) the competency and experience of counsel supporting the settlement; and (f) the extent to which the settlement is the product of arm's-length

bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007). Not all of these factors are relevant to every case. *See Plaza Equities LLC v. Pauker (In re Copperfield Invs., LLC)*, 401 B.R. 87, 96 (Bankr. E.D.N.Y. 2009).

59.     Although a court should evaluate all factors "relevant to a fair and full assessment of the wisdom of the proposed compromise," *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968), a court need not conduct a "mini-trial" of the merits of the claims being settled, *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d. Cir. 1983), or conduct a full independent investigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). The court is not required to decide every question of law or fact raised by litigation, but rather should canvass the issues to determine whether the settlement "falls below the lowest point in the range of reasonableness." *See Cosoff v. Rodman*, 699 F.2d at 607-08; *In Re Adelphia Communications Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).

60.     The Trustee respectfully submits that the Stipulation satisfies the standards for approval under Bankruptcy Rule 9019. In reaching that conclusion, Trustee considered what he learned during the section 341 Meeting, discussions and conferences with the Debtor, certain of the Westwood Members, and Blum. The Trustee and the Togut Firm have also reviewed numerous documents and pleadings concerning the Westwood Transfer, the potential Avoidance Claims, the Breach of Duty Claims, and the defenses assertable by the Westwood Parties. The documents that have been obtained and reviewed include, without limitation:

- Pleadings, transcripts, correspondences, and document productions from the Arbitration Case, including

documents related to the New York State Court confirmation of the Final Arbitration Award;

- Financial accounting and bookkeeping records of the Debtor, Westwood Capital, and other Debtor Subsidiaries;

- Bank records and tax filings of the Debtor, Westwood Capital, and other Debtor Subsidiaries;

- Corporate formation and governance documents of the Debtor, Westwood Capital, and other Debtor Subsidiaries;

- Long Form Audit Reports for Westwood Capital;

- Employment contracts regarding the Westwood Members and payroll records concerning the Debtor and its affiliates;

- Documents produced by the Debtor and the Westwood Parties;

- The Purchase and Sale Agreement and all related schedules, exhibits, and associated corporate approval documents, and communications among the Debtor and Westwood Parties concerning the same;

- The Mercer Valuation Report and correspondence concerning its preparation;  and

- Documents related to the Lease, including copies and amendments to the underlying lease agreement.

61. Based on his review of the materials referenced above and his negotiations with the Westwood Parties, the Trustee has determined in his considered business judgment that the terms of the Stipulation are reasonable and in the best interests of the Estate.

62. The Trustee observes that the Westwood Transfer bears badges of fraud, including the timing of the Westwood Transfer and the common ownership and management of the seller and the buyer, and that claims might be made to avoid the

Westwood Transfer as a fraudulent transfer under sections 548(a)(1)(A) and (B) of the Bankruptcy Code. However, the Trustee has also concluded that there would be significant challenges, risks and expenses in connection with litigating such claims, and that the outcome of such litigation would be uncertain.

63. Pursuant to Bankruptcy Code section 550, if the Westwood Transfer were successfully avoided, the Trustee would be able to recover either (a) the avoided property, i.e., the equity in Westwood Capital, or (b) the value of that equity to the extent, if any, such value exceeds the Purchase Price paid by Quarter Century.

64. The Trustee is cautious about the marketable value of the equity of Westwood Capital if it were recovered from Quarter Century under section 550. The information reviewed by the Trustee does not indicate that Westwood Capital historically produced a consistent material amount of upstream profit to the Debtor. Although there may be reason to question certain conclusions in the Mercer Valuation Report, the reported Valuation Price of $506,700 does not appear to the Trustee to be unreasonable on its face. Although accounting documents obtained by the Trustee disclose Westwood Capital had revenues during 2016-2019 of: $3.09 million, $3.54 million, $4.05 million and $12.58 million, respectively, approximately 90% of such revenue was used to pay contractual compensation to non-insider brokers and otherwise satisfy legitimate expenses.

65. Accounting documents obtained by the Trustee also disclose that: Westwood Capital operated at a loss in 2016; generated pretax profits of $40,000 and $61,000 in 2017 and 2018; and made a pre-tax profit of $1.53 million in 2019, and paid past-due contractual compensation to insiders. Finally, financial records obtained by

the Trustee indicate that Westwood Capital was operating at a loss for the calendar year 2020 as of the Petition Date.

66.     Moreover, Westwood Capital operated as a boutique broker-dealer that relied on its human capital to generate income on a transactional basis.  As a result, there can be no assurance that its equity could be sold for its "true" value if sold to a third party, if there is any willing buyer of such equity.  Certain of the Westwood Members, including Alpert, Messersmith, and Cabano, are or were key employees of Westwood Capital, and any third party that might be interested in purchasing Westwood Capital as an investment would need, but could not be assured of securing, the Westwood Members' cooperation.  Moreover, the Trustee has been advised that the non-insider commission brokers who generated the majority of Westwood Capital's prepetition revenue left Westwood Capital prior to the Petition Date.  These factors could suppress the market value of Westwood Capital's equity.  For these reasons, the Trustee has concluded that litigation to attempt to recover the equity of Westwood Capital would not likely result in value for the Estate beyond litigation costs.

67.     Alternatively, the Trustee could seek to recover the value of the Westwood Capital equity, if any, that exceeded the Purchase Price that was paid by Quarter Century.  However, the Trustee has concluded that such a recovery is uncertain and that the cost and expense of such effort could likely be prohibitive.

68.     Significantly, the Trustee would need to retain a valuation expert to provide expert testimony to challenge the valuations in the Mercer Report.  The Trustee has spoken to a number of potential valuation experts concerning possible engagements for this purpose, but he has not been able to identify an expert that is willing to produce a report and testify at trial at a cost that would make an avoidance action economically

feasible because the costs and expenses of expert reports and discovery could easily equal or exceed the amounts in controversy.[5]

69.     The Westwood Parties have advised the Trustee that they would vigorously defend any avoidance claims asserted against them.  In response to the Trustee's assertion of possible avoidance claims against them, the Westwood Parties have asserted and described defenses to claims for avoidance of actual or constructive fraudulent transfers.  They allege that they followed appropriate formalities and procedures in connection with the Westwood Transfer and that they made a good faith effort to value the equity in Westwood Capital and provided fair consideration.  They also allege that reasonably equivalent value was provided to the Debtor in exchange for the Westwood Capital.

70.     The Westwood Parties also allege that the Westwood Transfer was not intended to hinder, delay, or defraud Blum.  Rather, it was effected to avoid triggering notices under FINRA and SEC Rules that would have required Westwood Capital (the broker-dealer business) to suspend operations and timely notify FINRA if Westwood Capital or any associated member (which included the Debtor) became insolvent.  *See* FINRA Rules 1011, 0160, 4110(b)(1), 4530, and SEC Rule 15c3-1(c)(16).  The Westwood Parties allege, and Alpert testified under oath during the 341 Meeting, that entry of the Final Arbitration Judgment rendered the Debtor insolvent and motivated them to quickly execute a transfer of Westwood Capital to a solvent owner (Quarterly Century) to avoid a mandatory cessation of Westwood Capital's business.

---

[5]     None of those valuation candidates could identify public trading information for transactions involving broker dealers with the average level of revenue generated by Westwood Capital.

Based upon these considerations, they argue that a claim for actual fraudulent conveyance is not supported by the facts.

71.     The Trustee has also concluded that the FINRA and SEC Rules and the other defenses articulated by the Westwood Parties also impair any Breach of Duty Claims against the Westwood Parties.

72.     The Trustee also investigated payments made by the Debtor and/or Westwood Capital to the Westwood Parties. That investigation included review and analysis of compensation provisions contained in the Debtor's operating agreements, employment agreements, tax returns, K-1 forms, payroll records, and bank account statements. Based upon that investigation, the Trustee has concluded that recipients of those payments would assert that's such transfers satisfied existing obligations and were made in exchange for reasonable equivalent value, and that such payments are otherwise not subject to avoidance or recovery. Consequently, litigation to avoid and recover those transfers would be challenging and without certain recovery.

73.     The Trustee has considered all of the Parties' claims and defenses and while not a trier of fact, believes that there are serious challenges to recovery of avoidance claims that against the Westwood Parties. He has concluded that Westwood Parties have colorable defenses to claims to avoid the Westwood Transfer as either actual or constructive fraudulent transfers, and compared to the potential recoveries, the cost and expense of continued litigation, including expert testimony, is not warranted.

74.     Prosecution of the Avoidance Claims would be costly and time-consuming and would require substantial fact and expert discovery, deposition testimony, and legal research concerning, among other things, valuations of the equity

of a boutique broker-dealer and the forms of consideration paid by Quarter Century. The record demonstrates that the Westwood Members and Blum have been engaged in costly litigation for years, and that portends expensive future litigation absent a settlement: the Final Arbitration Award consisted of the Judgment Award of $234,000 and a Fee Award of $532,732.49, more than double the amount of the principle judgment that Blum obtained after years of extensive discovery and contested hearings.

75. The Stipulation provides an opportunity to recover $250,000, avoid future litigation and, importantly, end the litigation between Blum and the Debtor with finality.

**B.** **The Stipulation Should Be Approved**
**Notwithstanding That Blum Does Not Support It**

76. The terms of the Stipulation should not be compared against all other options, or even the alternative of dismissing the Chapter 7 Case sought by Blum's Dismissal Motion. The Stipulation need only be in the best interests of the Estate. *See In re Hilsen*, 404 B.R. 58, 75 (Bankr. E.D.N.Y. 2009) ("It is not the court's task to determine whether the settlement proposed by the parties is the best possible, or fairest, or most appropriate resolution of the dispute.").

77. The fact that Blum, as the majority creditor in the Case, does not support the Stipulation, is just one factor to be considered by the Court. *See In re Hilsen*, 404 B.R. 58, 75 (Bankr. E.D.N.Y. 2009) ("[P]roper deference to [the creditor's] reasonable views' is not the same as saying that the court must defer to the creditor simply because the only creditor (or a majority of creditors) does not think the settlement is fair.") (quoting *In re Vazquez,* 325 B.R. 30, 37 (Bankr. S.D. Fla. 2005)); *In re Southeast Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) ("The circuit courts have consistently held

that creditor views are but *one* of the factors to consider approving a settlement, and are not controlling.") (emphasis in original).

78. The Trustee respectfully submits that, considering the alternatives, the Stipulation is easily within the range of reasonableness and is fair, equitable and in the best interests of the Estate. The Stipulation results in actual cash available for distribution and avoids what promises to be escalating litigation costs and fees over a protracted period of time. Resolution of burdensome litigation is a primary factor in examining a proposed settlement. *See In re In re Dewey & Leboeuf L.L.P.*, 478 B.R. 627 at 642- 43 (Bankr. S.D.N.Y. 2012) (approving settlements in large part because they avoided costs and resolved of uncertainty of anticipated future litigation).

79. These factors were considered in *In re Hilsen*, 404 B.R. 58, 75 (Bankr. E.D.N.Y. 2009) ("Hilsen"). In *Hilsen*, the chapter 7 trustee commenced an adversary proceeding to recover prepetition transfers. The parties agreed that after the costs of administration were paid, any further recovery by the bankruptcy estate would be distributed to the debtor's sole priority creditor, who had "spent approximately twenty years seeking to enforce judgments arising from her 1988 divorce from the Debtor." *Id.* at 68. The chapter 7 trustee reached a settlement agreement with the transferee defendants to settle all avoidance claims for payments of $125,000. The Bankruptcy Court approved the settlement over the sole creditor's objection based upon the trustee's business judgment, finding that, among other things, the likelihood of protracted litigation weighed in favor of a settlement. The *Hilsen* court noted that "[a] court must carefully consider the reasonable views of creditors, but it may also exercise its discretion to approve a settlement over the objection of some creditors, a majority of

creditors, or even the sole creditor, if after weighing all the factors, the settlement falls above the lowest point in the range of reasonableness." *Id.* at 76.

## <u>CONCLUSION</u>

80.     Based on all of the foregoing, the Trustee respectfully submits that the Stipulation is fair, reasonable and in the best interests of the Debtor's Estate under all of the relevant circumstances, and should be approved. The Trustee also requests that Blum's Motion to Dismiss be denied.

## <u>NOTICE</u>

81.     Pursuant to Local Bankruptcy Rule 9074-1(b), notice of the Application has been given to: (i) the Debtor, by its counsel; (ii) the Westwood Parties, by their counsel; (iii) Blum, by his counsel; (iv) the United States Trustee; (v) all of the Debtor's known creditors; and (vi) any party in interest which has filed a Notice of Appearance in this Case.

## <u>NO PRIOR REQUEST</u>

82.     No prior application for the relief requested herein has been made to this or any other Court.

*[Concluded on Following Page]*

**WHEREFORE** the Trustee respectfully requests (1) entry of an order denying Blum's Motion to Dismiss;  (2) entry of the Proposed Order approving the Stipulation;  and (3) such other and further relief as is just and proper.

Dated:  New York, New York
      July 13, 2021

                           ALBERT TOGUT, not individually but solely
                           in his capacity as Chapter 7 Trustee,
                           By His Attorneys,
                           TOGUT, SEGAL & SEGAL LLP
                           By:

                           */s/ Neil Berger*
                           NEIL BERGER
                           EITAN BLANDER
                           One Penn Plaza, Suite 3335
                           New York, New York 10119
                           (212) 594-5000